Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Recurrente<br><br>v.<br><br>UNIÓN DE EMPLEADOS DE LA CORPORACIÓN DEL FONDO DEL SEGURO DEL ESTADO<br><br>Recurrido | KLRA202500193 | *Revisión Administrativa* procedente de la Junta de Relaciones del Trabajo<br><br>Sobre:<br>Práctica Ilícita<br><br>Casos Núm. CA-2019-29, CA-2019-30, CA-2019-32, CA-2019-33, CA-2019-36 |
|---|---|---|

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2025.

La parte recurrente, Corporación del Fondo del Seguro del Estado (en adelante, CFSE), comparece ante nos y solicita nuestra intervención para que dejemos sin efecto la determinación administrativa emitida por la Junta de Relaciones del Trabajo de Puerto Rico el 27 de febrero de 2025, notificada el 28 de febrero de 2025. Mediante la referida determinación, la Junta acogió el Informe del Oficial Examinador y resolvió *Ha Lugar* la querella presentada por la parte recurrida, Unión de Empleados de la Corporación del Fondo del Seguro del Estado (en adelante, UECFSE). Como parte de la orden emitida, se le impuso al patrono la obligación de cesar y desistir de toda práctica contraria al Convenio Colectivo, anular los movimientos de personal efectuados sin la participación de la UECFSE y restituir a los empleados en sus puestos originales. Además, ordenó el pago de una multa administrativa y la publicación de la decisión en lugares visibles, junto con la

Número Identificador

SEN2025 _____

notificación a la Junta sobre las medidas adoptadas para dar cumplimiento a lo allí dispuesto.

Por los fundamentos que expondremos a continuación, se confirma la resolución administrativa recurrida.

**I**

El 18 de junio de 2019, la parte recurrida presentó ante la Junta de Relaciones del Trabajo de Puerto Rico (en adelante, Junta), varios cargos contra la Corporación del Fondo del Seguro del Estado, por alegada violación al Artículo 8, Sección 1, Incisos (a), (d), (e) y (f) de la Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 de 8 de mayo de 1945. En esencia, la UECFSE alegó que la CFSE incurrió en práctica ilícita al realizar acuerdos extracontractuales individuales con miembros de la unidad apropiada que representa, relacionados con las condiciones de trabajo de dichos empleados. Específicamente, la UECFSE arguyó que la CFSE incurrió en práctica ilícita al ejecutar una serie de destaques y reubicaciones de empleados unionados, sin notificar a la unión. Se detalló que la CFSE, mediante acuerdos individuales, asignó a empleados unionados a nuevas funciones, no acordadas con la organización sindical, incluyendo tareas superiores sin retribución, tareas no definidas por convenio y funciones en áreas distintas a sus cargos originales. Según sostuvo la UECFSE, tales acuerdos contravenían el Artículo 49 del Convenio Colectivo, que prohíbe acuerdos extracontractuales individuales, así como los Artículos 9 y 25, relacionados con nombramientos, ascensos, reclasificaciones y traslados. De igual forma, planteó que dichas actuaciones vulneraban el Artículo 2 del Convenio, al menoscabar el reconocimiento de la UECFSE como representante exclusivo de la unidad apropiada.

Así las cosas, concluida la investigación preliminar de los cargos, la Junta autorizó la expedición de una querella formal, la

cual fue presentada el 10 de noviembre de 2021 por la División Legal de la Junta, en representación del Interés Público. En la querella se reiteraron los planteamientos de la UECFSE, imputándosele a la CFSE la violación al Artículo 8, Sección 1, Incisos (a), (d), (e) y (f) de la Ley Núm. 130, así como a los Artículos 2, 9, 25, 48 y 49 del Convenio, por realizar unilateralmente acuerdos extracontractuales y movimientos de personal en contravención de las disposiciones pactadas.

Por su parte, luego de varios incidentes procesales, la CFSE presentó una *Moción de Desestimación*. En su escrito, alegó que los movimientos de personal en cuestión se efectuaron debido a la crisis de emergencia fiscal que enfrentaba el Gobierno de Puerto Rico desde el año 2007. Afirmó que todos los traslados y designaciones administrativas se llevaron a cabo conforme a la legislación vigente. En particular, sostuvo que la Ley Núm. 66 de 2014, *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico*, junto a la Carta Circular Núm. 144-17, suspendía durante su vigencia las cláusulas del Convenio Colectivo relacionadas con los acuerdos y el reconocimiento UECFSE como representante exclusivo de la unidad apropiada. Según planteó en el pliego, dichas normas le conferían facultad administrativa para efectuar los movimientos de personal sin intervención de la UECFSE, con el propósito de lograr una operación más efectiva y eficiente. Por consiguiente, solicitó la desestimación de la querella.

Posteriormente, ante la presentación de la *Moción de Desestimación* por la CFSE, el caso fue referido a un Oficial Examinador para la correspondiente evaluación y recomendación. Así las cosas, el 12 de noviembre de 2024, luego de considerar una *Oposición a Solicitud de Desestimación* presentada por la UECFSE, el Oficial Examinador emitió su *Informe y Recomendación*, notificado en esa misma fecha.

En el referido Informe, luego de analizar los planteamientos de las partes, el Oficial Examinador recomendó declarar *No Ha Lugar* a la solicitud de desestimación presentada por la parte recurrente, y *Ha Lugar* a la querella. Puntualizó que la CFSE no justificó adecuadamente el incumplimiento de su deber de notificar a la UECFSE los movimientos de personal realizados. Interpretó que la Ley Núm. 66-2014 no impedía ni limitaba dicha notificación, ni las demás garantías estatutarias conferidas a los empleados unionados. Determinó, además, que la actuación u omisión imputada a la CFSE atentaba contra los derechos estatutarios y constitucionales de los unionados, por lo que constituía una práctica ilícita. En consecuencia, concluyó que la conducta de la CFSE infringió los Artículos 2, 9, 48 y 49 del Convenio Colectivo, así como el Artículo 8, Sección 1, Incisos (a), (d) y (f) de la Ley Núm. 130. Asimismo, recomendó que se impusiera una multa al patrono y que se emitiera una orden correctiva.

Luego de haber evaluado los escritos de las partes, el 27 de febrero de 2025, la Junta emitió una *Decisión y Orden* mediante la cual acogió en su totalidad el Informe del Oficial Examinador. En consecuencia, declaró *Ha Lugar* la Querella presentada por la UECFSE, determinando que la CFSE incurrió en práctica ilícita al ejecutar los traslados y acuerdos extracontractuales sin la participación de la UECFSE como representante exclusivo de los empleados. En consecuencia, la Junta ordenó a la CFSE: (1) cesar y desistir de violar el Convenio Colectivo vigente entre las partes, en particular las disposiciones sobre Acuerdos Extracontractuales, Reconocimiento de la Unión, Traslados y Sustitución Interna; (2) anular las contrataciones individuales realizadas y restituir a los empleados a sus puestos originales; (3) satisfacer a la Junta una multa administrativa de $2,500.00 por cada uno de los cinco casos presentados, para un total de $12,500.00; (4) divulgar en sitios

visibles a los empleados unionados un aviso sobre la decisión; e (5) informar a la Junta las medidas adoptadas para dar cumplimiento a la orden.

Inconforme, el 31 de marzo de 2025, la parte recurrente compareció ante nos mediante el presente recurso de revisión judicial. En el mismo, formula el siguiente señalamiento de error:

> Erró la Junta al acoger el Informe de Oficial Examinador toda vez la CFSE no incurri[ó] en violaci[ó]n a la Ley 130 de Relaciones del Trabajo toda vez, la CFSE se encontraba cumpliendo y poniendo en vigor las leyes de emergencia fiscal.

Luego de examinar el expediente que nos ocupa, procedemos a expresarnos.

## II

### A

La Ley de Relaciones del Trabajo de Puerto Rico, Ley Núm. 130 del 8 de mayo de 1945 (Ley Núm. 130), según enmendada, 29 LPRA secs. 61, *et seq.*, establece la política pública del Gobierno de Puerto Rico en cuanto a las relaciones obrero-patronales y la celebración de convenios colectivos. A tenor con ello, el estatuto reconoce que la paz industrial, los salarios adecuados y seguros para los empleados, así como la producción ininterrumpida de artículos y servicios, constituyen factores esenciales para el desarrollo económico de Puerto Rico, los cuales se promueven y garantizan a través de la negociación y celebración de convenios colectivos. 29 LPRA sec. 62. En consonancia con dicho propósito, el Artículo 4 de la Ley Núm. 130 le reconoce a los empleados el derecho a organizarse entre sí; a constituir, afiliarse o ayudar a organizaciones obreras; negociar colectivamente a través de representantes por ellos seleccionados; y dedicarse a actividades concertadas con el propósito de negociar colectivamente u otro fin de ayuda o protección mutua. 29 LPRA sec. 65.

En lo pertinente al caso de autos, el Artículo 8, Sección 1 de la Ley Núm. 130 dispone que:

Será práctica ilícita del trabajo el que un patrono, actuando individualmente o concertadamente con otros:

(a) Intervenga, restrinja, ejerza coerción o intente intervenir, restringir o ejercer coerción con sus empleados en el ejercicio de los derechos garantizados por el Artículo 4 de esta ley (29 L.P.R.A. § 65)

[. . .]

(d) Rehúse negociar colectivamente con el representante de una mayoría de sus empleados en una unidad apropiada de negociación colectiva, sujeto a las disposiciones del Artículo 5 (29 L.P.R.A. § 66). A los fines de la negociación colectiva, la subcontratación se considerará materia mandatoria de negociación.

(e) Negociar o hacer un convenio colectivo con un representante para fines de negociación colectiva que no represente una mayoría de los empleados en una unidad apropiada para la negociación colectiva.

(f) Viole los términos de un convenio colectivo, incluyendo un acuerdo en el que se comprometa a aceptar un laudo de arbitraje, esté o no dicho acuerdo incluido en los términos de un convenio colectivo; Disponiéndose, sin embargo, que la Junta podrá declarar sin lugar cualquier cargo en el cual se alegue una violación de este inciso, si la unión que es parte en el contrato es culpable de una violación en curso del convenio o no ha cumplido con una orden de la Junta relativa a alguna práctica ilícita de trabajo, según lo dispone esta ley.

[. . .]

29 LPRA sec. 69.

Por otra parte, sabido es que, "los convenios colectivos, como otros contratos, tienen fuerza de ley entre las partes, siempre que no contravengan las leyes, la moral o el orden público". *UGT v. HIMA,* 212 DPR 492, 507 (2023); *AAA v. UIA*, 199 DPR 638, 650 (2018). Así que, el convenio colectivo "obliga al patrono, a la [u]nión y a los miembros individuales de la [u]nión". *C.O.P.R. v. S.P.U.,* 181 DPR 299, 320 (2011). Como resultado, "ni el patrono ni los obreros

pueden pretender beneficiarse de ciertas cláusulas y rechazar otras". *Íd.* Así, al pactar su contenido, las partes deben cumplirlo con estricta rigurosidad. *Íd.*

El Convenio Colectivo vigente al momento de los hechos, suscrito entre la Corporación del Fondo del Seguro del Estado y la Unión de Empleados de la CFSE para el periodo de los años 2011 al 2015, reconoce expresamente, en su Artículo 2, *supra,* a la UECFSE como el representante exclusivo de todos los empleados cobijados por la unidad apropiada, con capacidad para negociar colectivamente sobre los términos y condiciones de empleo. En virtud de este reconocimiento, el convenio impone a la CFSE la obligación de informar y comunicar oportunamente a la unión toda gestión relacionada con la administración de personal. En particular, su Artículo 9, *supra,* dispone con claridad que la Corporación debía notificar a la Unión cualquier intención de traslado, congelación, eliminación o reclasificación de puestos dentro de la unidad apropiada, así como las convocatorias para ingreso, ascenso y el registro de elegibles, asegurando así la participación efectiva del representante exclusivo en tales procesos.

Por su parte, el Artículo 25, *supra,* establece que, cuando la Corporación interese trasladar a un empleado con carácter permanente, deberá notificar dicho traslado tanto al empleado como a la Unión "antes de efectuarse el mismo", con el fin de permitir que ambos puedan participar del proceso. Además, dispone que los traslados "no podrán ser arbitrarios ni caprichosos, ni podrán utilizarse como medida disciplinaria".

Por último, el Artículo 49, *supra,* prohíbe categóricamente la celebración de acuerdos individuales con miembros de la unidad apropiada que "en forma alguna menoscabe o afecte las disposiciones de este Convenio", estableciendo que "cualquier acuerdo de esa naturaleza será nulo e inválido". Esta norma

resguarda el principio fundamental de la negociación colectiva, al impedir que la Corporación actúe unilateralmente en aspectos que afectan las condiciones de empleo, fuera de los mecanismos pactados en el Convenio.

**B**

Por otra parte, la *Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico*, Ley Núm. 66-2014, 3 LPRA sec. 9101, *et seq.,* se promulgó con el propósito de declarar un estado de emergencia en el gobierno y adoptar un plan para manejar las consecuencias de la crisis fiscal y económica que atravesaba el país. Véase Exposición de Motivos, Ley Núm. 66-2014, *supra.* En lo aquí pertinente, dicha legislación permitió la realización de traslados y destaques administrativos entre puestos, clases, niveles y unidades apropiadas, incluidas aquellas compuestas por empleados unionados, siempre que se cumpliera con los requisitos mínimos de preparación académica y experiencia, y que tales movimientos no se utilizaran como medida punitiva, arbitraria ni resultaran onerosos para el empleado. 3 LPRA sec. 9116. El estatuto dispuso que quedaría en suspenso toda disposición de ley, reglamento, convenio o acuerdo que fuera contrario a lo allí establecido, reconociendo así plena flexibilidad para realizar tales acciones de personal. *Íd.* Además, el estatuto extendió la vigencia de las cláusulas no económicas de los convenios colectivos que estuviesen expirados a la fecha de comenzar la vigencia de la Ley, o que expiraran durante su vigencia. 3 LPRA sec. 9118. En cuanto a las corporaciones públicas, se ordenó la suspensión de aquellas cláusulas no económicas de los convenios colectivos vigentes que tuvieran efectos económicos directos o indirectos que agravaran su situación presupuestaria o cuya suspensión resultara necesaria para aliviarla. 3 LPRA sec. 9123.

Posteriormente, el 3 de enero de 2017, fue aprobada la *Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico*, Ley Núm. 3-2017, 3 LPRA sec. 9391, *et seq.*, mediante la cual se reafirmaron y ampliaron las medidas adoptadas previamente bajo la Ley Núm. 66-2014, *supra*. A tales efectos, se reiteró la extensión de las cláusulas no económicas de los convenios colectivos hasta el 30 de junio de 2021. 3 LPRA sec. 9398. Asimismo, la Ley reafirmó que toda norma contenida en convenios, leyes, reglamentos o disposiciones administrativas que resultara contraria a sus disposiciones quedaría suspendida durante su vigencia, incluyendo aquellas que restringieran la estructura o distribución de la plantilla gubernamental. 3 LPRA sec. 9396. Además, sostuvo expresamente que las medidas adoptadas al amparo de dicha legislación no constituirían prácticas ilícitas ni violaciones a los convenios colectivos vigentes. 3 LPRA sec. 9399.

De igual forma, se ordenó la suspensión de aquellas cláusulas no económicas negociadas en convenios vigentes que tuvieran un efecto económico directo o indirecto sobre la operación de las corporaciones públicas, en tanto agravasen su situación presupuestaria o fuera necesario suspenderlas para aliviarla. A esos fines, la legislación adoptó como referencia las cláusulas enumeradas en la Ley Núm. 66-2014, *supra*, y reconoció un procedimiento específico para canalizar cualquier duda al respecto. En particular, se dispuso que ante cualquier interrogante sobre si determinada disposición del convenio tiene o no un efecto económico directo o indirecto que incida en la estabilidad fiscal de la corporación pública, deberá someterse una consulta a la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico, cuya respuesta sería vinculante para la corporación solicitante. 3 LPRA sec. 9404.

En armonía con las disposiciones de la Ley Núm. 3-2017, *supra*, y con el propósito de asegurar su adecuada implementación, el 29 de octubre de 2019, la entonces Secretaria de la Gobernación, Zoé Laboy Alvarado, emitió el Memorando OSG-2019-002, dirigido a todas las jefas y jefes de las entidades de la Rama Ejecutiva. Este documento reafirmó la vigencia de las cláusulas no económicas u otras no afectadas por la referida legislación, al tiempo que enfatizó el deber ineludible de las corporaciones públicas de mantener comunicación constante y directa con los representantes exclusivos de los empleados unionados en la unidad apropiada debidamente certificada. En lo pertinente, en la Parte IV, el referido memorando estableció que "[l]as entidades deberán cumplir con las cláusulas del convenio colectivo que regulen este proceso de notificación" y recalcó que los asuntos no económicos contenidos en los convenios colectivos continuaban vigentes.

Asimismo, en la Parte III, Inciso 2, dispuso que cada entidad de la Rama Ejecutiva deberá "tomar las medidas necesarias para mantener canales de comunicación abiertos [...] con las uniones a través de sus representantes exclusivos", e instó a establecer un calendario de reuniones que permitiera a dichos representantes discutir preocupaciones, inquietudes o situaciones relacionadas con el empleo. El memorando también puntualizó que la responsabilidad sobre el cumplimiento y la administración de los convenios colectivos recae sobre cada entidad, incluyendo la resolución de cualquier conflicto o reclamación que pueda surgir. Tal directriz, de carácter administrativo y vinculante, reforzó la obligación de las corporaciones públicas de cumplir con el proceso de notificación pactado en los convenios colectivos y de reconocer, en todo momento, el rol representativo de las uniones, conforme a la política pública laboral vigente.

**III**

En el presente recurso, la parte recurrente plantea que la Junta de Relaciones del Trabajo de Puerto Rico erró al acoger el Informe del Oficial Examinador y concluir que incurrió en una práctica ilícita al omitir notificar a la UECFSE sobre los traslados y destaques administrativos realizados durante el año 2019. En esencia, la CFSE argumentó que sus actuaciones se llevaron a cabo al amparo de la Ley Núm. 66-2014, *supra*, y la Ley Núm. 3-2017, *supra*, las cuales, según sostiene, autorizaban llevar a cabo movimientos de personal sin necesidad de notificación previa a la unión. Habiendo entendido sobre los referidos señalamientos, a la luz del derecho aplicable y de los hechos establecidos, resolvemos confirmar la resolución administrativa recurrida.

Tal cual previamente expuesto, en el presente caso, la Junta determinó que la CFSE incurrió en una violación al deber de negociación colectiva y a su obligación de reconocer a la UECFSE como representante exclusivo de los empleados unionados. Específicamente, la Junta sostuvo que la CFSE ejecutó una serie de destaques y reubicaciones de empleados unionados sin comunicar tales decisiones a la UECFSE, y que, en cambio, negoció directamente con los trabajadores afectados sin su participación. Consecuentemente, la Junta concluyó, que la conducta constituía una práctica ilícita conforme a lo dispuesto Artículo 8, Sección 1, Incisos (a), (d), (e) y (f) de la Ley Núm. 130, así como una violación a los Artículos 2, 9, 25, 48 y 49 del convenio colectivo vigente. Le asiste la razón. Veamos.

Es un hecho probado en el expediente que la CFSE llevó a cabo diversos movimientos de personal y destaques administrativos durante el año 2018 sin notificar a la UECFSE ni incluirla en el proceso decisional, pese a que dicha organización ostentaba la representación exclusiva de los empleados unionados conforme al

convenio colectivo vigente. Por lo tanto, la controversia que nos ocupa es una estrictamente de derecho, y gira en torno a si, a la luz de las leyes fiscales invocadas por la CFSE, está exenta de su obligación de informar y consultar a la UECFSE respecto a los movimientos de personal implementados. Para resolver esta controversia, corresponde evaluar el alcance de las leyes fiscales citadas por la CFSE y su relación con las disposiciones del convenio colectivo vigente al momento de los hechos.

Como reseñamos anteriormente, la Ley Núm. 66-2014, conocida como Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico, estableció un marco extraordinario para atender la crisis económica del país. Entre otras disposiciones, la legislación permitió a las entidades gubernamentales realizar traslados y destaques administrativos "entre puestos, clases y niveles de puestos, grupos de empleados, unidades apropiadas, de unidades sindicales a no sindicales y viceversa", siempre que el empleado cumpliera con los requisitos mínimos y que los movimientos no resultaran punitivos, arbitrarios u onerosos. 3 LPRA sec. 9116. La ley también dispuso que quedaban en suspenso aquellas disposiciones legales o contractuales contrarias a este régimen de flexibilidad. *Íd.* A su vez, el referido estatuto, autorizó la suspensión de cláusulas no económicas que tuvieran efectos económicos directos o indirectos, tales como limitaciones a la reasignación de tareas, restricciones al fraccionamiento de funciones, o cláusulas que obligaran al patrono a obtener consentimiento de la unión para ejercer su facultad de administración. 3 LPRA sec. 9123.

Posteriormente, con la aprobación de la Ley Núm. 3-2017, 3 LPRA sec. 9391, *et seq.,* el legislador reiteró la política pública de austeridad fiscal, extendió la vigencia de las cláusulas no económicas de los convenios colectivos hasta el 30 de junio de 2021,

y declaró en suspenso cualquier disposición que obstaculizara las medidas adoptadas por las entidades gubernamentales, incluyendo las corporaciones públicas. La referida ley también autorizó expresamente la suspensión de cláusulas no económicas con efectos presupuestarios y estableció que ante cualquier interrogante sobre el carácter económico o no de una cláusula contractual, la corporación debía canalizar una consulta ante la Autoridad de Asesoría Financiera y Agencia Fiscal (AAFAF), cuya determinación sería vinculante. 3 LPRA sec. 9404.

Este Tribunal no pasa por alto que ambas leyes les conferían a las corporaciones públicas una flexibilidad significativa para reorganizar su fuerza laboral, incluso mediante traslados de empleados unionados. No obstante, el análisis no puede detenerse ahí. El hecho de que ambos estatutos permitieran ejecutar movimientos de personal no significa que ello facultara al patrono a ignorar el rol institucional de la unión como representante exclusivo de los empleados cubiertos por el convenio colectivo.

Esta interpretación encuentra respaldo en el contenido del Memorando Núm. OSG-2019-002, emitido por la entonces Secretaria de la Gobernación, Zoé Laboy Alvarado, dirigido a todas las jefas y jefes de las entidades de la Rama Ejecutiva del Gobierno de Puerto Rico. A través del referido documento, el Ejecutivo consignó como política pública el deber ineludible de mantener una "comunicación constante y directa con los representantes exclusivos de sus empleadas y empleados" unionados, incluso bajo la vigencia de las leyes fiscales. En efecto, lejos de dispensar al patrono de ese deber, el memorando instó a que las entidades públicas tomaran "las medidas necesarias para mantener canales de comunicación abiertos" con las uniones y sus representantes certificados. Esta exhortación oficial reafirma que el propósito de las leyes fiscales no era excluir a las organizaciones sindicales del proceso de toma de

decisiones administrativas, sino procurar que los ajustes se ejecutaran dentro de un marco de respeto al rol institucional de la unión y a la negociación colectiva. Así pues, la CFSE no podía interpretar que las prerrogativas concedidas por la legislación fiscal desactivaron el vínculo obligatorio que le impone el convenio colectivo de reconocer y notificar a la UECFSE, como representante exclusivo de sus empleados unionados.

A la luz del expediente ante nuestra consideración, quedó acreditado que el convenio colectivo aplicable contenía cláusulas que reconocían expresamente a la UECFSE como la única entidad con capacidad representativa en las relaciones entre la CFSE y sus empleados unionados. Dicho reconocimiento no puede interpretarse como una cláusula no económica con efectos económicos. Por el contrario, se trata de una estipulación central al régimen de negociación colectiva vigente, cuya omisión impactaba directamente los derechos fundamentales de los trabajadores a la representación sindical y al diálogo institucionalizado.

Además, al examinar el texto de la Ley Núm. 66-2014, *supra*, y de la Ley Núm. 3-2017, *supra*, no encontramos alguna dispensa explícita al patrono del deber de notificar a la unión. Aunque ambas leyes autorizan los destaques administrativos y la suspensión de ciertas cláusulas, ninguna de sus disposiciones excluye a la unión del proceso, ni prohíbe la comunicación entre patrono y sindicato sobre la ejecución de esas medidas. De hecho, el propio esquema normativo reconoce que, ante la duda sobre el impacto económico de una disposición, el patrono debía gestionar una consulta formal ante la AAFAF. La CFSE no realizó tal gestión, ni justificó por qué omitió notificar los movimientos de personal a la UECFSE.

Así pues, justipreciamos que la CFSE procedió a ejecutar los destaques y reubicaciones de personal sin cumplir con su obligación de notificar previamente a la UECFSE, según exigido en el Convenio

Colectivo vigente. Esta omisión tuvo el efecto de excluir a la unión del proceso, en contravención a su rol como representante exclusivo de los empleados unionados, lo cual configuró una práctica ilícita conforme a lo dispuesto Artículo 8, Sección 1, Incisos (a), (d), (e) y (f) de la Ley Núm. 130, según enmendada.

Conforme a lo discutido, este Tribunal concluye que la Junta de Relaciones del Trabajo actuó conforme a derecho al acoger las determinaciones del Oficial Examinador. Si bien las leyes fiscales le otorgaban a la CFSE cierta flexibilidad administrativa, tales medidas no autorizaban a ignorar el deber de reconocer a la unión ni a prescindir del proceso de notificación y consulta exigido contractualmente. La prueba que obra en el expediente que nos ocupa, sostiene la corrección de la función adjudicativa desplegada, ello a tenor con los hechos establecidos y el derecho aplicable a los mismos.  Por tanto, no podemos sino sostener lo resuelto.

**IV**

Por los fundamentos que anteceden, se confirma la *Decisión y Orden* administrativa recurrida.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones